**STATE OF WEST VIRGINIA**

**FILED**

March 19, 2021
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Petitioner**

**vs.)    No. 20-0123** (BOR Appeal No. 2054120)
                    (Claim No. 2018016155)

**CONNIE TITUS,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Murray American Energy, Inc., by Counsel Denise D. Pentino and Aimee M. Stern, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Connie Titus, by Counsel Robert L. Stultz, filed a timely response.

The issue on appeal is medical benefits. The claims administrator denied a left shoulder arthroscopy and an arm sling on January 8, 2019. The Workers' Compensation Office of Judges ("Office of Judges") reversed the decision in its August 9, 2019, Order and authorized the requested medical benefits. The Order was affirmed by the Board of Review on January 23, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Titus, a coal miner, was injured on January 12, 2018, when the bus she was driving in a coal mine struck another bus. She sought immediate treatment at Wheeling Hospital Emergency Room where she reported that she was traveling about fifteen miles per hour and was not wearing a seatbelt. Ms. Titus stated that she had pain in her right thigh, knee, and hip. A left shoulder x-ray showed no acute findings. A CT scan of the cervical spine showed multilevel disc narrowing and spurring but no acute injury. She was diagnosed with right hip, right knee, and acute lumbar sprains. The Employees' and Physicians' Report of Injury was completed at Wheeling Hospital that day. It indicates Ms. Titus was injured when she was struck head on by a bus. The diagnoses

1

were right hip strain, right knee sprain, lower back strain, unspecified head injury, and left shoulder pain.

A treatment note by Ross Tennant, FNP, indicates Ms. Titus reported on January 15, 2018, that at the time of her injury, she struck her head and right hip. She stated that she had significant pain in her lower back and right hip, extending to her right leg and foot. Ms. Titus had no left shoulder pain. Mr. Tennant diagnosed closed head injury, lumbar strain, and right hip contusion. On January 22, 2018, Ms. Titus reported pain in her mid and lower back, a burning sensation in her right thigh, and numbness in her right toes. Ms. Titus's right hip pain had improved. On January 29, 2018, Ms. Titus reported lower back and right hip pain. She was diagnosed with closed head injury, lumbar strain, right hip contusion, cervical thoracic sprain, and left shoulder sprain. Physical therapy was recommended for the cervical and left shoulder sprains.

A February 5, 2018, treatment note from Hudson Premier Physical Therapy indicates Ms. Titus was seen for cervical and left shoulder sprains caused by a work-related accident. She reported that she did not have cervical or left shoulder problems prior to the injury.

David Soulsby, M.D., performed an independent medical evaluation on March 6, 2018, in which he noted that Ms. Titus complained of pain in her chest, right hip, and lower back. Dr. Soulsby diagnosed lumbar sprain, mild to moderate lumbar degenerative disc disease, cervical sprain, and left shoulder sprain and found that Ms. Titus had not reached maximum medical improvement. He recommended a left shoulder MRI and opined that Ms. Titus's pain likely resulted from an injury to the soft tissues at the upper end of her mastectomy scar. Dr. Soulsby further opined that she sustained soft tissue cervical and low back sprains and that the right hip contusion was consistent with bursitis.

Ms. Titus underwent a left shoulder MRI on March 23, 2018, which showed degenerative changes but no evidence of acute injury or internal derangement. In a March 28, 2018, treatment note, Mr. Tennant stated that a left shoulder MRI showed degenerative changes. Ms. Titus reported left shoulder pain and the inability to perform overhead activities.

In an April 3, 2018, treatment note, Jeffrey Abbott, M.D., indicated Ms. Titus was seen for right hip and left shoulder injuries. Dr. Abbott diagnosed right hip labrum tear, radiculopathy, neck pain, and acute left shoulder pain. Ms. Titus had positive left shoulder impingement sign. A left shoulder MRI showed acromioclavicular joint disease. A cervical MRI was performed on April 29, 2018, and revealed narrowing of the C5-6 foramina, which could affect the C5 and C6 nerve roots. There was no spinal canal stenosis.

Dr. Soulsby performed an independent medical evaluation on July 31, 2018, in which he diagnosed right hip labrum tear, acute lumbar sprain/strain, mild to moderate lumbar degenerative disc disease, acute cervical sprain/strain, cervical degenerative disc disease, and left shoulder sprain. Dr. Soulsby found that Ms. Titus had reached maximum medical improvement for her cervical spine, lumbar spine, and left shoulder. However, Ms. Titus had not reached maximum medical improvement for the right hip. Dr. Soulsby opined that the MRI arthrogram showed a labrum tear. He recommended surgical repair.

2

In a September 18, 2018, treatment note, Mr. Tennant noted that Ms. Titus was seen by Dr. Schweizer, who recommended right hip arthroscopy and opined that she suffered a left shoulder injury. Ms. Titus returned to Dr. Schweizer on October 8, 2018, for a follow-up after her right hip surgery. She was to continue physical therapy. Ms. Titus was also to undergo an MRI and x-rays of the left shoulder due to a lack of progress with conservative treatment and therapy. An October 23, 2018, left shoulder MRI showed subacromial subdeltoid bursitis, acromioclavicular joint degeneration, mild glenohumeral joint degeneration with diffuse labral degeneration, and minor rotator cuff tendinopathy with partial tearing at the supraspinatus and infraspinatus tendon joint.

On January 2, 2019, Dr. Schweizer diagnosed left shoulder subacromial impingement, superior labrum anterior to posterior (SLAP) tear, biceps tendonitis, and acromioclavicular joint arthritis. He recommended left shoulder arthroscopy and requested authorization for the surgery and a left arm sling. The claims administrator denied the request on January 8, 2019. On January 23, 2019, Dr. Schweizer completed a Diagnosis Update requesting that left shoulder SLAP tear, left shoulder pain, left subacromial impingement, left shoulder biceps tendonitis, and left acromioclavicular degenerative joint disease be added to the claim.

Ms. Titus underwent left shoulder surgery on January 29, 2019, by Dr. Schweizer. The post-operative diagnoses were shoulder pain of unspecified chronicity, subacromial impingement, SLAP tear, biceps tendonitis, acromioclavicular joint arthritis, mild rotator cuff partial thickness tear, and subacromial bursitis. On February 4, 2019, the claims administrator denied the addition of superior glenoid labrum lesion, shoulder pain, left shoulder bicipital tendinitis and left shoulder impingement syndrome to the claim. The claims administrator denied the addition of left shoulder osteoarthritis to the claim on February 4, 2019.

Dr. Soulsby performed a Record Review on February 22, 2019, in which he stated that he reviewed additional records, including a left shoulder MRI and Dr. Schweizer's reports. Dr. Soulsby noted that he examined Ms. Titus three times and concluded that the evidence does not indicate Ms. Titus sustained a work-related acute disc injury. He stated that the radiographic findings were degenerative and commonly seen in people Ms. Titus's age. Dr. Soulsby opined that Ms. Titus's continued pain was not the result of her work injury. He also opined that the left shoulder SLAP tear was not the result of the compensable injury because the first post-injury MRI did not show a rotator cuff tear or labrum injury. Dr. Soulsby stated that impingement is usually degenerative. Dr. Soulsby also opined that Ms. Titus did not develop left shoulder biceps tendinitis or acromioclavicular degenerative joint disease as a result of the compensable injury. Dr. Soulsby concluded that physical therapy was reasonable for the right hip and that acute cervical strain and left shoulder strain should be added to the claim.

On February 26, 2019, the claims administrator added cervical sprain and left shoulder joint sprain to the claim. The claims administrator added right hip sprain to the claim and denied authorization of an evaluation by Dr. Schweizer, a left shoulder MRI, a referral to a pain clinic, a physical therapy consultation, physical therapy, injections, authorization of a left shoulder arthroscopy, and an arm sling. The Office of Judges added right hip labral tear to the claim and

3

authorized the requested medical benefits on March 29, 2019. The decision was affirmed by the Board of Review.

Ms. Titus followed up with Dr. Schweizer on April 4, 2019, who noted that Ms. Titus's left shoulder continued to improve. She was to continue range of motion exercises. On May 1, 2019, Ms. Titus continued to improve and was cleared for light-duty work. The Office of Judges reversed a February 4, 2019, claims administrator's decision and added left shoulder superior glenoid labrum lesion, bicipital tendonitis, and impingement syndrome to the claim on May 31, 2019. Primary osteoarthritis, cervical disc displacement, cervicalgia, left shoulder pain, anesthesia of skin, and paresthesia of the skin were denied.

The Office of Judges reversed the claims administrator's denial of authorization for a left shoulder arthroscopy and an arm sling and authorized the requested treatment in its August 9, 2019, Order. The Office of Judges found that the claim was held compensable for left shoulder joint sprain. The Office of Judges determined that the evidence showed Ms. Titus injured her left shoulder as a result of the work injury. She underwent conservative treatment, but her pain persisted so she was referred to Dr. Schweizer, who diagnosed subacromial impingement, SLAP tear, biceps tendonitis, and acromioclavicular joint arthritis. He also requested that those conditions be added to the claim. The Office of Judges, in a decision dated May 31, 2019, added left shoulder superior glenoid labrum lesion, bicipital tendonitis, and impingement syndrome to the claim. The Office of Judge concluded that Dr. Schweizer performed left shoulder surgery to treat the compensable conditions and such treatment should be authorized. A left arm sling was also authorized. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on January 23, 2020.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. West Virginia Code § 23-4-3(a)(1) (2019) provides that the claims administrator must provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies. The record shows that Dr. Schweizer requested authorization for and performed left shoulder surgery in order to treat subacromial impingement, SLAP tear, biceps tendonitis, and acromioclavicular joint arthritis. The claim has been held compensable for left shoulder superior glenoid labrum lesion, bicipital tendonitis, and impingement syndrome. Clearly, the left shoulder surgery and arm sling were reasonable, necessary treatment for the compensable left shoulder conditions.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed

**ISSUED: March 19, 2021**

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton